IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRANDON BEASLEY, #259429, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:17-CV-423-WKW |
| | ) | (WO) |
| | ) | |
| LT. BOYD, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Brandon Beasley, an indigent state inmate, challenging actions which occurred in April of 2017 at Easterling Correctional Facility. Doc. 1. Specifically, Beasley alleges that Lt. Kendrick Boyd, a correctional officer employed at Easterling, failed to protect him from attack by inmates Charles Yates, Patrick Smith and George Kirkland on April 18, 2017. Doc. 1 at 2–3. Beasley seeks a declaratory judgment, monetary damages and injunctive relief in this cause of action. Doc. 1 at 4. As Beasley does not state otherwise and upon its liberal construction of the complaint, the court construes the complaint to seek relief from Boyd in both his official and individual capacities.

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

Boyd filed a special report and relevant evidentiary materials in support of his report, including affidavits, prison documents and medical records, addressing the claims presented by Beasley.  Doc. 12 & Docs. 12-1 through 12-5.  In these documents, Boyd denies he acted with deliberate indifference to Beasley's safety.

After reviewing the special report filed by Boyd, the court issued an order on November 2, 2017 directing Beasley to file a response to such report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  Doc. 13 at 2.  The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. 13 at 3 (emphasis in original).  Beasley filed no response to Boyd's special report as required by this order.

Pursuant to the directives of the above described order, the court deems it appropriate to treat the special report and exhibits filed by Boyd (Doc. 12) as a motion for summary judgment.  Upon consideration of Boyd's motion for summary judgment, the evidentiary materials filed in support thereof and the sworn complaint, the court concludes that summary judgment is due to be granted in favor of Boyd.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks

evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendant meets his evidentiary burden, as Boyd has in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R .Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific

4

facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)\; *see also* Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the

material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]"  *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage. . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").  However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion."  *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).  In addition, conclusory

allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape

the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard*, 548 U.S. at 525.  Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.  Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Beasley has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of Boyd.

### III.  DISCUSSION

### A.  Sovereign Immunity

To the extent Beasley seeks monetary damages from Defendant Boyd in his official capacity, Boyd is entitled to sovereign immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit [via waiver of immunity] must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp.*

8

*v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity,

*see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here.  The Alabama Constitution states
> that "the State of Alabama shall never be made a defendant in any court of
> law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized
> that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment

immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751,

753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.

1990)).

In light of the foregoing, Boyd is entitled to sovereign immunity under the Eleventh

Amendment for claims seeking monetary damages from him in his official capacity.

*Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir.

1998) (holding that state officials sued in their official capacities are protected under the

Eleventh Amendment from suit for damages); *Edwards v. Wallace Comty. College*, 49 F.3d

1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued

in his official capacity).

### B.  Qualified Immunity

Boyd raises the defense of qualified immunity to the claim for monetary damages

lodged against him in his individual capacity.  Doc 12 at 2.  "The defense of qualified

immunity completely protects government officials performing discretionary functions

from suit [for damages] in their individual capacities unless their conduct violates 'clearly

established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). "Unless a government agent's act is so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor is immune from suit." *Lassiter v. Ala. A&M University Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Eleventh Circuit has determined that the law is "clearly established" for purposes of qualified immunity "only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega Cty. Bd. of Educ.*, 115 F.3d 821, 826–27 n.4 (11th Cir. 1997). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Even so, qualified immunity is only an

10

affirmative defense to an action for damages; it has no impact on requests for declaratory or injunctive relief.  *See Wood v. Strickland*, 420 U.S. 308, 315, n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), *overruled in part on other grounds by Harlow*, 457 U.S. 800; *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (holding that the defense of qualified immunity is limited to actions for monetary damages and does not serve as a defense to actions seeking equitable relief).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority."  *Gonzalez*, 325 F.3d at 1234.  In this case, it is clear "that the defendant[] [was] acting within [his] discretionary authority" as a correctional officer at the time of the incident so "the burden shifts to [Beasley] to show that qualified immunity is not appropriate."  *Id*.; *see also Townsend v. Jefferson Cty*., 601 F.3d 1152, 1158 (11th Cir. 2010).  To meet this burden, Beasley must prove "(1) the defendant[] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004); *Crosby v. Monroe Cty*., 394 F.3d 1328, 1332 (11th Cir. 2004) (same); *Youmans*, 626 F.3d at 562 (citation omitted) ("[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was clearly

established at the time of the violation.").  This court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Id*.; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42) (holding that the court may analyze the elements attendant to qualified immunity "in whatever order is deemed most appropriate for the case").

### C.  Deliberate Indifference to Safety — Standard of Review

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotations and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with this knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jean*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 at 834.  "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of .

. . the prison staff and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  The Eleventh Circuit, however, has consistently "stress[ed] that a prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313 (11th Cir. 2005) (internal quotation marks and citation omitted).  The duty to protect inmates from one another is not absolute "because the Eighth Amendment addresses only punishment.  Whether an injury inflicted by fellow prisoners . . . is punishment depends on the mental state of those who cause or fail to prevent it.  The requisite mental state for prison officials is intent, or its functional equivalent, described as deliberate indifference[.]" *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (internal quotation marks and citations omitted).  "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The Eleventh Circuit has consistently held that "'[i]n order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136

13

(5th Cir. 1981), *cert. denied*, 464 U.S. 932 (1983); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (same).

The law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective element of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exists. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29. As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing *Farmer*, *supra*, in noting that to demonstrate deliberate indifference a defendant "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also 'draw that inference.'"). "Proof that the defendant should have perceived the risk, but did not, is insufficient." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).

Moreover, the Eleventh Circuit has specifically stated a plaintiff "cannot [simply] say, 'Well, they should have known[,]'" to show that a defendant had subjective awareness of a substantial risk of harm to him. *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013). If a court "[w]ere to accept that theory of liability, the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not." *Id*. The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834–38, 114 S. Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324–25, 115 L. Ed. 2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter*, 352 F.3d at 1349. A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person knew at the time of the incident." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). A correctional official must be aware of a

sufficiently serious threat to an inmate's safety before the Eighth Amendment "imposes a duty to provide reasonable protection.  Merely negligent failure to protect an inmate from attack does not justify liability under section 1983[.] . . .  The known risk of injury must be a strong likelihood, rather than a mere possibility before a [correctional officer's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted); *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (same); *King*, 997 F.3d at 261 ("To sustain his constitutional claim, the inmate must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.") (internal quotation marks omitted).  Deliberate indifference requires "a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Finally, the plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known serious risk of harm caused the plaintiff's constitutional injury.  *See Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "*particular threat or fear felt by [the] [p]laintiff.*"  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference."  *Id.* at 1349 (quotations omitted).

16

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Consequently, to proceed beyond the properly supported motion for summary judgment filed by Boyd, Beasley must establish both the subjective and objective components of deliberate indifference. *Johnston*, 135 F.3d at 377; *Caldwell*, 748 F.3d at 1099; *Johnson v. Boyd*, 568 F. App'x 719, 723–24 (11th Cir. 2014). To satisfy the subjective component, Beasley must show that Boyd "subjectively knew that [he] faced a substantial risk of serious harm from [his inmate attackers]. The defendant must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference. To satisfy the objective component, [Beasley] must [show] that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson*, 568 F. App'x at 723–24 (internal citations omitted).

### D.  Deliberate Indifference to Safety — Analysis

Beasley complains Defendant Boyd acted with deliberate indifference to his safety regarding an assault committed against him by other inmates on April 18, 2017. In support of this claim, Beasley alleges that two days before the assault he advised Boyd a general threat to his life had been made. Doc. 1 at 2.

In response to the complaint, Boyd denies he acted with deliberate indifference to Beasley's safety. Specifically, Boyd states and the undisputed record establishes that Boyd was not at Easterling on the date Beasley alleges he spoke to Boyd about a threat to his life.

Doc. 12-3 at 1; Doc. 12-4 at 1.  Boyd further maintains he had no knowledge that any inmate posed a serious risk of harm to Beasley prior to the challenged assault or even that Beasley generally feared for his safety at the time of the altercation at issue.  Doc. 12-3 at 1.

Upon review of the record, the court finds it is devoid of evidence that Boyd was aware of any likelihood, strong or otherwise, that Beasley would be assaulted by inmates Yates, Smith and Kirkland on April 18, 2017.  Specifically, the record contains no evidence that Beasley provided information to Boyd of a credible threat made to him by his inmate attackers from which Boyd could infer that a substantial risk of imminent harm existed to Beasley from these inmates prior to the assault at issue, a requisite element for establishment of deliberate indifference.  Thus, Beasley's deliberate indifference to safety claim first fails as there is nothing before the court which shows that Boyd was subjectively aware of any risk of harm to Beasley posed by the inmates who attacked him prior to the assault made the basis of this complaint.  Furthermore, Beasley has failed to present any evidence showing inmates Yates, Smith and Kirkland posed "an objectively substantial serious risk of harm" to him prior to the assault about which he complains, the second element necessary to demonstrate deliberate indifference. *Marsh*, 268 F.3d at 1028–29. The law is clear that a correctional officer responsible for an inmate's safety cannot be liable for a risk of which he is unaware.  *Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to

inmate health or safety[.]").  Under the circumstances of this case, deliberate indifference has not been shown.  *Johnson*, 568 F. App'x at 722 (holding that complaint properly dismissed because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker]."); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (holding that where Plaintiff did "not identif[y] any specific 'serious threat' from [inmate attacker]" or report any such threat to the defendants, mere "fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (concluding that "the district court did not err by dismissing [Plaintiff's] failure-to-protect charge for failure to state a claim.  While [Plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate . . . , he did not allege that the defendants had notice that he was in danger from . . . the inmate who attacked him.  Simply put, the allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack. . . .  Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who actually attacked him] and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided

no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate who attacked him]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any [specific] fear [he] felt [from this particular inmate]."); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because Plaintiff merely advised he "had problems" with fellow inmate and was generally "in fear for [his] life.").

Since Defendant Boyd did not act with deliberate indifference to Beasley's safety, he is entitled to qualified immunity from the request for monetary damages made against him in his individual capacity and summary judgment is due to be granted in his favor on this request for relief.  Moreover, due to the lack of deliberate indifference, Beasley is likewise due no declaratory or injunctive relief from Boyd in any capacity and summary judgment is therefore due to be granted in favor of Boyd on these requests for relief.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendant's motion for summary judgment (Doc. 12) be GRANTED.

2.  Judgment be GRANTED in favor of the defendant.

3.  This case be DISMISSED with prejudice.

4.  Costs be taxed against the plaintiff.

On or before **June 29, 2020**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the proposed findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 12th day of June, 2020.


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE